**This order is SIGNED.**

**Dated: June 4, 2026**



**PEGGY HUNT**
**U.S. Bankruptcy Judge**

*aep*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 25-25459 |
| PLAZA 106, LLC, | Chapter 11 |
| Debtor. | Honorable Peggy Hunt |

## ORDER SUSTAINING OBJECTION TO PROOF OF CLAIM NO. 4–1

## AND DENYING MOTION TO ALLOW CLAIM

The matters before the Court are an *Objection to Claim No. 4 Filed by First Utah Bank* ("**Claim Objection**") filed by the Debtor,[1] and a *Motion to Allow Claim* ("**Claim Allowance Motion**") filed by First Utah Bank ("**Bank**").[2] The Debtor's Claim Objection seeks to disallow the Bank's *Proof of Claim* ("**POC**")[3] because it was filed after the deadline to file proofs of claim in this case lapsed. The Claim Allowance Motion, on the other hand, requests that the Court treat the Bank's *Motion for Relief From Stay* (the "**Stay Relief Motion**"),[4] filed before the expiration of the deadline, as a proof of claim or an informal proof of claim or, alternatively, extend the deadline to file a proof of claim. Notice of the Claim Objection and the Claim

---

[1] Dkt. No. 37.
[2] Dkt. No. 44.
[3] Claim Dkt. No. 4–1.
[4] Dkt. No. 9. *See* Dkt. No. 10 (Notice of Hearing).

Allowance Motion is proper and no further notice is required.[5] The Bank filed an *Opposition* to the Claim Objection and the Debtor filed a *Reply*.[6] The Debtor also filed a *Response* to the Claim Allowance Motion.[7]

A hearing on the Claim Objection and the Claim Allowance Motion was held on March 31, 2026. Andres Diaz, Diaz & Larsen, represented the Debtor; and Brian M. Rothchild, Parsons, Behle & Latimer, represented the Bank. Argument was made and the Court took the matter under advisement.

The Court has reviewed the above-noted papers and the record in this case, considered the arguments made by counsel, and conducted an independent review of the law. Based thereon, the Claim Objection must be sustained and the Claim Allowance Motion denied.

## I.      JURISDICTION AND VENUE

1.      The Debtor filed a petition seeking relief under Chapter 11 of the Bankruptcy Code[8] on September 15, 2026 ("**Petition Date**").

2.      The Court's jurisdiction over this case is properly invoked under 28 U.S.C. §§ 157(a) and 1334(b), as well as the District Court's *Order of Reference* at DUCivR 83–6.1.

3.      Under 28 U.S.C. § 157(b)(1), the Court may hear and determine the present Motion by entry of a final order because it is a core proceeding as it arises under the Bankruptcy Code and arises in this bankruptcy case. The Motion may also be included as a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

---

[5] *See* Dkt. Nos. 38, 45.
[6] Dkt. Nos. 43, 46.
[7] Dkt. No. 61.
[8] References herein to the "Bankruptcy Code" are to title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* All statutory references are to the Bankruptcy Code, unless otherwise stated.

4.      Venue of this case in this District is not contested and is proper pursuant to 28 U.S.C. § 1408.

## II.      UNDISPUTED FACTS

### The Prepetition Debt

5.      Prior to the Petition Date, the Bank loaned the Debtor $2,750,000 as evidenced by a *Business Loan Agreement* and *Promissory Note*.[9]

6.      The Debtor's obligations under the Business Loan Agreement and Promissory Note were secured by certain of the Debtor's real and personal property pursuant to a *Deed of Trust* and an *Assignment of Rents* that were recorded with the Salt Lake County Recorder.[10]

7.      Prior to the Petition Date, the Debtor defaulted under the loan documents, the debt was accelerated, and the Bank commenced foreclosure proceedings in state court, including by recording a *Notice of Default* and *Election to Sell* and publishing and serving on the Debtor a *Notice of Trustee's Sale*.[11]

8.      These collection proceedings were paused while the parties negotiated a potential workout, but when negotiations broke down, the Bank served the Debtor with a *Notice of Intent to File Notice of Default*. A second *Notice of Default* and *Election to Sell* were recorded, and a *Notice of Trustee's Sale* was published and served on the Debtor.[12]

### The Bankruptcy Case, the Bar Date, and the POC

---

[9] Claim Allowance Motion, ¶¶ 1–2. The facts asserted in the Claim Allowance Motion are nearly identical to those asserted by the Bank in its Opposition to the Claim Objection and, therefore, the Court will only cite to the Claim Allowance Motion.
[10] *Id.*, ¶¶ 3–4.
[11] *Id.*, ¶¶ 5–8.
[12] *Id.*, ¶¶ 7–11.

9.      On September 15, 2025, one day prior to the scheduled trustee's sale, the Debtor filed its *Petition* seeking relief under Chapter 11 of the Bankruptcy Code, thus commencing this case, and its *Statement of Financial Affairs and Schedules*.[13]

10.      The Debtor lists the Bank as a secured creditor in its *Schedules* and asserts that the Bank has an oversecured disputed claim.[14]

11.      A *Notice of Chapter 11 Bankruptcy Case* (the "**Bar Date Notice**") was docketed by the Court and served September 19, 2026, on, among others, the Bank, stating that the deadline to file proofs of claim was January 12, 2026 (the "**Bar Date**").[15]

12.      Paragraph 7 of the Bar Date Notice states that secured creditors "retain rights in their collateral regardless of whether they file a proof of claim" and that if a claim is designated as "disputed" a proof of claim must be filed or "you might not be paid on your claim . . . ."

13.      The Bank filed its POC on January 15, 2026, three days after the expiration of the Bar Date.[16]

14.      The reason the POC was not timely filed "was inadvertence . . . which was occasioned by the Bank working intently with Debtor's counsel to prepare for the evidentiary hearing" on the Stay Relief Motion discussed below, scheduled for February 5, 2026.[17]

15.      The POC asserts a secured claim in the total amount of $3,214,021.13, stating that the claim is secured by a recorded lien on real estate and the Assignment of Rents. The Bank declared the value of the property securing its lien as $3,530,000.[18]

---

[13] Dkt. No. 2.
[14] *Id*. (Schedule D, ¶ 2.2); *see* Claim Objection, ¶¶ 3–4.
[15] Dkt. No. 6; *see* Claim Objection, ¶ 5.
[16] Claim Dkt. No. 4–1; Claim Objection, ¶ 6; Claim Allowance Motion, ¶ 17.
[17] Claim Allowance Motion, p. 11.
[18] POC, ¶ 9.

16.     Attached to the POC are recorded copies of the loan documents described above; a ledger and loan payoff statement prepared by the Bank supporting the amount of its asserted claim as of the Petition Date; and a May 2025 appraisal report the Debtor's real property obtained by the Bank supporting its valuation.[19]

**The Stay Relief Motion**

17.     On October 16, 2025, months before the expiration of the Bar Date, the Bank filed with the Court and served on the Debtor its Stay Relief Motion, supported by the same documents attached to the POC,[20] as well as documents evidencing its prepetition foreclosure efforts discussed above.[21]

18.     The Stay Relief Motion sought relief under § 362(d) to lift "the automatic stay to allow Movant to exercise all of its rights and remedies in accordance with non-bankruptcy law . . . ."[22]

19.     As in the POC, the Bank alleged in the Stay Relief Motion that the debt owed to it on the Petition Date was $ 3,214,021.13, and that a May 2025 appraisal report showed that its collateral was worth $3,530,000.[23]

20.     The Bank asserted that there was "cause" for relief from the automatic stay under § 362(d)(1) based on several allegations, including prepetition and postpetition payment defaults, failure to obtain permission to use the Bank's cash collateral, failure to offer adequate protection and the declining value of its collateral.[24]

---

[19] *Id.*, pp. 4–155.
[20] Stay Relief Motion, Exhs. A–F, H; *see* Claim Allowance Motion, ¶¶ 13–14.
[21] Stay Relief Motion, Exhs. G, I–N.
[22] *Id.*, p. 1.
[23] *Id.*, ¶¶ 13, 15.
[24] *Id.*, pp. 4–5.

21.    Alternatively, the Bank asserted that there was a basis for relief from the automatic stay under § 362(d)(2). Relying on its May 2025 appraisal report, the Bank stated: "The Debtor has little to no equity in the collateral because the value of the Property is substantially less than the amount owed to the Movant considering taxes, late fees, interest, and attorney's fees."[25]

22.    The Debtor did not contest the Bank's debt in its response to the Stay Relief Motion. Rather it stated in relevant part that "even by [the Bank's] own appraisals, the Debtor has equity in the Real Property."[26] The appraisal reports the Debtor refers to are the Bank's May 2025 report that it relied on in the Stay Relief Motion and a report obtained by the Bank in April 2024 valuing the property at $4,000,000.[27]

23.    A preliminary hearing on the Stay Relief Motion was held in November 2025, at which time the parties made representations consistent with their papers, and an evidentiary hearing was scheduled.

24.    At or about that time, the Debtor agreed to pay the Bank monthly adequate protection payments, beginning with a payment for October 2025.[28]

25.    An evidentiary hearing on the Stay Relief Motion was scheduled to commence on January 6, 2026, but was rescheduled to February 5, 2026, at the parties' request.[29]

26.    At the scheduled hearing, evidence was admitted and arguments were made. The Bank continued to assert that the property collateralizing its lien was worth approximately $3,400,000, which was more than its debt, but that equity in the property was eroding. The

---

[25] *Id*., p. 5.
[26] Dkt. No. 12, ¶ 25. *See* Dkt. No. 13 (Bank Reply, pp. 2–3 (arguing oversecured, but eroding equity)).
[27] Dkt. No. 12, ¶ 15.
[28] Dkt. No. 22, ¶ 3.
[29] Dkt. Nos. 22, 25, 27.

Debtor continued to assert that the property was valued between approximately $4,200,000 and $4,400,000. At the conclusion of the hearing, the Court took the matter under advisement.

27.   On March 2, 2026, after the evidentiary hearing concluded, the Court entered an *Order* granting the Bank's Stay Relief Motion under § 362(d)(1) for cause, authorizing the Bank "to take all actions and exercise all remedies in accordance with applicable law with respect to the Collateral."[30]

## III.   ANALYSIS

### The Bank Must File a Proof of Claim to Have Voting and Distribution Rights

28.   Bankruptcy Code § 101(5)(A) and (10) provides in relevant part that a "creditor" is an entity holding prepetition "claim" against the debtor, and a "claim" is a "right to payment."

29.   Section 501(a) of the Bankruptcy Code states that a creditor may file proof of its claim.

30.   Section 1111(a) of the Bankruptcy Code states that "[a] proof of claim . . . is deemed filed under section 501 . . . for any claim . . . that appears in the schedules filed under section 521(a)(1) . . . , except a claim . . . that is scheduled as disputed, contingent, or unliquidated."[31]

31.   Implementing § 1111(a), Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") provides that in a Chapter 11 case, a creditor whose claim is scheduled as "disputed . . . *must* file a proof of claim . . . ." (emphasis added). And that a creditor "who fails to do so will not be treated as a creditor for that claim for voting and distribution."[32]

---

[30] Dkt. No. 54, ¶ 2.
[31] *Accord* Fed. R. Bankr. P. 3003(b)(1).
[32] *See* 11 U.S.C. §§ 502(a), 507, 1129(a)(1) and (b) (allowance of proofs of claim, priority of distributions to holders of allowed claims, and requirement that Chapter 11 plan incorporate these sections), and 1126(a) (holders of allowed claims may accept or reject a plan).

32.    A secured creditor's valid and enforceable liens ride through a bankruptcy case untouched even if the creditor does not file a proof of claim.[33] Thus, when a secured creditor does not file a proof of claim, it may satisfy its claim by executing on collateral subject to a lien, but it may not vote on confirmation of a plan or seek a distribution from the estate based on any portion of the claim not satisfied by its collateral.

33.    Pursuant to Bankruptcy Rule 3003(c)(3): "The court must set the time to file a proof of claim . . . and may, for cause, extend the time. If the time has expired, the proof of claim . . . may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (3), (4), and (7)." Applicable here is Bankruptcy Rule 3002(c)(7) which states: "On a creditor's motion filed before or after the time to file a proof of claim has expired, the court may extend the time to file" but the motion may only be granted "if the court finds that the notice was insufficient to give the creditor a reasonable time to file."

34.    The Debtor here scheduled the Bank as a creditor holding an oversecured, disputed claim. Thus, although the Bank's lien interests ride through the case untouched, under § 1111(a) and Bankruptcy Rule 3003(c)(2), the Bank must file a proof of claim to be treated as a creditor for voting and distribution purposes.

35.    Further, it is undisputed that in accordance with Bankruptcy Rule 3003(c)(2), the Court set the deadline to file a proof of claim, defined above as the "Bar Date," the Bar Date Notice was timely served on the Bank, and the Bank did not file the POC prior to the expiration of the Bar Date.

36.    The Court cannot extend the Bar Date for "cause" as permitted Bankruptcy Rule 3003(c)(3) because the Bar Date expired and that Rule, which expressly incorporates Bankruptcy

---

[33] *See Dewsnup v. Timm*, 502 U.S. 410, 418 (1992); *see also* Fed. R. Bankr. P. 3002(a) ("A lien that secures a claim is not void soley because an entity failed to file a proof of claim").

Rule 3002(c)(7) titled "Extending the Time to File," states that an expired bar date may be extended only if "the court finds that the notice [of the bar date] was insufficient to give the creditor a reasonable time to file."[34] There is no allegation in this case that notice was insufficient to give the Bank a reasonable time to file a proof of claim.

37.     Accordingly, although the Bank may satisfy its claim against the Debtor by executing on its perfected interests in the Debtor's property, the Bank may not vote on a plan or seek a distribution from the estate based on any unsecured portion of its claim, unless (a) the Stay Relief Motion filed prior to the expiration of the Bar date is deemed to be a timely-filed proof of claim or an informal proof of claim to which the late-filed POC relates back, or (b) the Bar Date is extended as permitted under the Bankruptcy Rules. These conditions have not been met in this case.

---

[34] Fed. R. Bankr. P. 3002(c)(7). It would seem there would be no need for further consideration of extending the Bar Date. Specifically, Bankruptcy Rule 9006(b), which governs time extensions under the Rules, allows a court to extend the time to act under Rule 3002(c) "but only as permitted by" that Rule. Fed. R. Bankr. P. 9006(b)(3)(A). Thus, under Rule 3002(c)(7), expressly applicable in this Chapter 11 case under Rule 3003(c)(3), the only authority to extend the Bar Date is insufficient notice. Courts, however, typically analyze whether an expired claims bar date may be extended under Bankruptcy Rule 9006(b)(1)(A) for "excusable neglect" as that term is interpreted in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380 (1993). Yet, it is arguable that Rule 9006(b)(1)(A) no longer applies because that subsection governs only to the extent that Rule 9006(b)(3)(A) is not triggered – which as discussed, it seems to be. *Pioneer,* a case involving an expired claims bar date, was decided prior to the addition subsection (c)(7) to Rule 3002 and thus there was no reference to it in Rule 3003(c)(3). The Court relied on the following version of Rule 3003(c)(3): "The Court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3) and (c)(4)." *Id*., at 382, n.1. Presumably, because Rule 3002(c)(2), (c)(3) and (c)(4) did not apply to the debtor in *Pioneer* and did not govern the extension of an expired claims bar date, the Court turned to the general excusable neglect standard in Rule 9006(b)(1). Since *Pioneer*, however, Rules 3002 and 3003(c)(3) have been amended to limit extensions of expired claims bar dates to instances involving insufficient notice. Accordingly, it would seem that Rule 9006(b)(3)(A), not Rule 9006(b)(1)(A), governs extending an expired claims bar date. *See Jones v. Arross*, 9 F.3d 79 (10th Cir. 1993) (excusable neglect standard under Rule 9006(b)(1) does not apply in Chapter 7 cases given the limitations in Rule 3002(c)). Nonetheless, the Court applies Rule 9006(b)(1)(A) in its analysis below because arguments based on Rules 3002(c)(7) and 3003(c)(3) were not raised and there is no change in the result. The Court also notes that it was suggested in *Pioneer* that Rule 9006(b)(3) could not apply to Chapter 11 cases because it only referred to Rule 3002(c), governing Chapter 7, 12 and 13 cases, and not Rule 3003(c) applicable in Chapter 11 cases. *Id*., at n.4. But, for the reasons stated, the discussed post–*Pioneer* amendments to Rules 3002(c)(7) and 3003(c)(3) seem to suggest otherwise.

**The Stay Relief Motion is Not a Proof of Claim or an Informal Proof of Claim**

38.    The Bank maintains that the Stay Relief Motion, filed prior to the expiration of the Bar Date, (a) is a proof of claim that was amended by the POC, or (b) is an informal proof of claim to which its untimely POC relates back. These arguments are without merit.

<u>The Stay Relief Motion is Not a Proof of Claim</u>

39.    Bankruptcy Rule 3001(a) states: "A proof of claim is a written statement of a creditor's claim. It must substantially conform to [Official] Form 410."

40.    The Bank maintains that the Stay Relief Motion met the requirements of Bankruptcy Rule 3001(a) because it "thoroughly described the nature of the Bank's claim against the Debtor, the extent of its security interest in the Debtor's collateral, and its prior attempts to collect on account of its claim through the exercise of its nonjudicial foreclosure remedies."[35]

41.    The Stay Relief Motion is a written statement establishing that (a) the Bank had a claim against the Debtor on the Petition Date in the amount of $3,214,021.13 and (b) it had enforceable secured interests against the Debtor's property valued by the Bank to be worth more than the amount of the debt.

42.    The Stay Relief Motion, however, does not express any intent by the Bank to assert a right to payment against the Debtor for an unsecured debt. Instead, the Stay Relief Motion expressly established an oversecured claim and sought relief to allow the Bank to exercise its rights as a secured creditor outside of this case by foreclosing on its collateral in state court.

43.    The single case cited by the Bank to support its argument on this point is not binding and, in any event, does nothing more than quote Bankruptcy Rule 3001(a) discussed

---

[35] Claim Allowance Motion, ¶ 13; *see id*. pp. 6–7.

above and analyze a creditor's filings as an informal proof of claim using standards not applicable in this Circuit.[36]

44.    Importantly, allowing the Stay Relief Motion to serve as a proof of claim, as argued by the Bank, would circumvent the requirements necessary to establish an informal proof of claim discussed below.

45.    For these reasons, the Stay Relief Motion is not a timely filed proof of claim.

<u>The Stay Relief Motion is Not an Informal Proof of Claim</u>

46.    The Bank maintains that the Stay Relief Motion, filed prior to the expiration of the Bar Date, is an informal proof of claim.[37]

47.    It is true that a document filed prior to the expiration of a claim filing deadline may be treated as an informal proof of claim to which a late-filed proof of claim may relate back.[38]

48.    But, to be treated as an informal proof of claim, the document on which the informal claim is based must meet all five factors outlined by the Court of Appeals for the Tenth Circuit in *Clark v. Valley Fed. Sav. & Loan Ass'n. (In re Reliance Equities, Inc.)*:[39]

1. the proof of claim must be in writing;
2. the writing must contain a demand by the creditor on the debtor's estate;
3. the writing must express an intent to hold the debtor liable for the debt;
4. the proof of claim must be filed with the Bankruptcy Court; *and*
5. based on the facts of the case, it would be equitable to allow the amendment.[40]

---

[36] *See id.,* p. 6 (citing *In re Key*, 64 B.R. 786 (Bankr. M.D. Tenn. 1986)).

[37] Claim Allowance Motion, pp. 7-9.

[38] *See, e.g., Clark v. Valley Fed. Sav. & Loan Assoc. (In re Reliance Equities, Inc.),* 966 F.2d 1338, 1345 (10th Cir. 1992); *see also In re Integrity Directional Servs., LLC*, Case No. 23–6111, 2024 WL 3534368 (10th Cir. July 25, 2024) (citing *Hutchinson v. Otis, Wilcox & Co*., 190 U.S. 552, 555 (1903)).

[39] 966 F.2d 1338.

[40]*Id*., at 1345 (emphasis added). *See Integrity Directional Servs.*, 2024 WL 3534368, at *2 (*Reliance Equities* factors are expressly conjunctive).

49.    In this case only the second, third and fifth *Reliance Equities* factors are at issue.

Based on the undisputed facts and the record in this case these factors have not been satisfied.

50.    The second and third factors have not been met for the reasons already stated. The

Stay Relief Motion is not a demand by the Bank on the Debtor's estate and does not evince an

intent to hold the Debtor liable for a debt in the bankruptcy case. The Bank was seeking relief to

exercise its rights outside of this Court to execute on its collateral. This case is not unlike

numerous other cases holding that a motion for relief from stay rarely serves as a basis for an

informal proof of claim,[41] and cases cited by the Bank stating otherwise are not binding and

factually distinguishable.

51.    Furthermore, the fifth *Reliance Equities* factor has not been met. The Bank

maintains that it would be inequitable to not allow the Stay Relief Motion to serve as an informal

proof of claim because the POC was filed only three days late, the Bank vigorously asserted its

rights as a secured creditor both before and after the Petition Date, and administration of the

Debtor's estate will not be impacted by allowing the claim given the status of the case.

52.    Even accepting these arguments as true, the Court concludes that it would be

inequitable to treat the Stay Relief Motion as an informal proof of claim. In *Reliance Equities*,

the Tenth Circuit held that a claim filed one day late would not be allowed and that the trustee's

---

[41] *See, e.g., In re Integrity Directional Servs., LLC,* 613 B.R. 361 (Bankr. W.D. Okla. 2020) (relief from stay motion must make a demand on the estate and evidence an intent to hold the debtor liable on a claim), *aff'd,* 2024 WL at 3534368; *In re McCutchen,* 536 B.R. 930 (Bankr. N.D. Okla. 2015) (stay relief motion cannot serve as informal proof of claim because it contains no explicit intention to hold the estate liable for an unsecured claim and no explicit or implicit claim for a right to distribution from estate assets); *In re Roberts*, 367 B.R. 677, 682 (Bankr. D. Colo. 2007) ("Under the *Reliance Equities* standard, there may be circumstances where a motion for relief from stay could constitute an informal proof of claim, but those circumstance[s] would be rare indeed."); *In re Glick*, 136 B.R. 654, 655–56 (Bankr. W.D. Vir. 1991) (stay relief motion cannot serve as informal proof of claim because it contains no explicit intention to hold the estate liable for an unsecured claim and no explicit or implicit claim for a right to distribution from estate assets); *In re Mitchell*, 82 B.R. 583, 586 (Bankr. W.D. Okla. 1988) (same). The case cited by the Bank is factually distinguishable. *In re Fish,* 456 B.R. 413, 418 (B.A.P. 9th Cir. 2011) (relief from stay motion was an informal proof of claim where, unlike the present case, the papers filed stated an intent to hold the debtor liable for any deficiency claim).

knowledge of the claim was not a basis to allow it.[42] Additionally, as discussed, the Stay Relief

Motion did not put the Debtor on notice of the Bank's intent to assert rights as an unsecured

creditor – indeed, at every turn the Bank asserted that it was oversecured. Finally, the Bank and

its counsel are experienced and there has not been a compelling reason provided for missing a

noticed deadline.[43]

53.    By not meeting all the factors set forth in *Reliance Equities*, the Stay Relief

Motion may not serve as an informal proof of claim.

### The Bar Date May Not Be Extended

54.    The Bank argues that the Bar Date should be extended under Bankruptcy Rule

9006(b)(1)(B), which states in relevant part: "[T]he court may—at any time and for cause—

extend the time to act if: . . .  on motion made after the specified period expires, the failure to act

within that period resulted from excusable neglect."[44] Applying this standard,[45] the Claim

Allowance Motion must be denied.

55.    In *Pioneer Investment Services Co. v. Brunswick Associates Limited*

*Partnership,*[46] the United States Supreme Court examined what is "excusable neglect" under

Bankruptcy Rule 9006(b)(1).

56.    The Court in *Pioneer* concluded that the use of the word "neglect" in Bankruptcy

Rule 9006(b)(1) showed that it was "plainly contemplated that the [bankruptcy] courts would be

---

[42] 966 F.2d at 1345.

[43] *Reliance Equities*, 966 F.2d at 1345 ("equities do not favor protecting a financial organization that had numerous opportunities to protect itself."); *Integrity Directional Servs.,* 2024 WL 3534368, at *4 (equities not met where creditor and counsel were sophisticated, they had knowledge of the bar date, and did not articulate any compelling reason for missing the deadline).

[44] Claim Allowance Motion, pp. 10–11.

[45] *See supra* n.34.

[46] 507 U.S. 380 (1993).

permitted[, where appropriate,] to accept late filings caused by inadvertence, mistake, or carelessness. . . ."[47]

57.    The Court went on to hold, however, that even if "neglect" exists, it must be "excusable" and this determination "is at bottom an equitable one, taking account all relevant circumstances surrounding the party's omission."[48] In so doing, courts may look at any number of factors, including "danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[49] But, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'"[50]

58.    The Bank's POC in this case was filed three days late and prior to the Debtor filing a Chapter 11 plan. The plan was not filed until February 28, 2026,[51] and has not been prosecuted since. Thus, there is little danger of prejudice to the Debtor or impact in the administration of this case. There also are no allegations of bad faith. The question, therefore, focuses on the reason for the delay, including whether the late filing "was within the reasonable control" of the Bank.

59.    It is generally understood in the Tenth Circuit that the "reason for" or the "fault in the delay" is "'perhaps the most important single factor – in determining whether neglect is

---

[47] *Id*., at 381.
[48] *Id*., at 395.
[49] *Id*.
[50] *Id.,* at 392.
[51] Dkt. No. 51.

excusable.'"[52] "An inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect."[53]

60.    In *In re Lang*,[54] the Tenth Circuit fully adopted an *Opinion* of the Bankruptcy Appellate Panel of the Tenth Circuit stating that "[v]irtually all of the published decisions" reject the appellant's argument that "the failure to comply with the deadline . . . due to the press of other business constitutes excusable neglect."[55]

61.    The Bank states that "the reason for delay in this case was inadvertence . . . which was occasioned by the Bank working intently with Debtor's counsel to prepare for the [February 5, 2026] evidentiary hearing."[56] This reason simply does not fall within the scope of "excusable neglect" as articulated in *Pioneer* and applied in the Tenth Circuit. The reason is not adequate given that the Bar Date was on January 12th and the evidentiary hearing did not commence until February 5th. But, more important, the Tenth Circuit has made clear that the press of other business is not a basis for finding excusable neglect.

62.    There being no excusable neglect the Bar Date may not be extended and the Bank's POC is not allowable because it was not timely filed.

*[Intentionally Blank]*

---

[52] *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *City of Chanute v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)); *Gould v. KT Weaver (In re Darter)*, 2025 WL 3141853 *4 (B.A.P. 10th Cir. Nov. 10, 2025).
[53] *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017).
[54] 414 F.3d 1191 (10th Cir. 2005).
[55] *Id.*, at 1200; *see id.*, n.27 (citing numerous cases); *see also id.*, at 1200–1201 (quoting *Pioneer*, 507 U.S. at 398 ("little weight" is given "to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date.") (internal quotation marks omitted)).
[56] Claim Allowance Motion, p. 11.

## IV.   ORDER

For the reasons set forth herein, **IT IS HEREBY ORDERED** that:

1.  The Claim Objection is **SUSTAINED** and the POC is **DISALLOWED**;[57] and

2.  The Claim Allowance Motion is **DENIED**.

---

[57] The Debtor requests that the Bank be prohibited from enforcing its lien and that its claim not be allowed to accrue postpetition interest, costs, fees and other charges. Claim Objection, p. 2. The Objection was filed prior to the Court's entry of its Order granting the Bank's Stay Relief Motion. Therefore, this request is moot and to the extent it is still being requested it is denied.

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing *Order Sustaining Objection to Proof of Claim No. 4–1 and Denying Motion to Allow Claim* shall be served on the parties in the manner designated below:

**By Electronic Service**: The parties of record in this case, as identified below, are registered CM/ECF users.

- Michael Ronald Brown     mbrown@parsonsbehle.com
- Andres' Diaz     courtmail@adexpresslaw.com
- John S. Gygi     john.gygi@sba.gov
- Bradley C. Johnson bcjohnson@saltlakecounty.gov, cabaker@saltlakecounty.gov
- Timothy J. Larsen     tlarsen@adexpresslaw.com
- James C. Lewis     jlewis@lewishansen.com, wendy@lewishansen.com
- David Adam Miller     AMiller@slco.org, aphillips@saltlakecounty.gov
- Mark C. Rose     mrose@rqn.com, docket@rqn.com;asanchez@rqn.com
- Brian M. Rothschild     brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- United States Trustee     USTPRegion19.SK.ECF@usdoj.gov
- Brody Valerga     brodyvalerga@gmail.com, brodyvalerga@gmail.com
- Melinda Willden tr     melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- Zack L Winzeler     ecf@parsonsbehle.com, zwinzeler@parsonsbehle.com

**By U.S. Mail**: In addition to the parties receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

*None.*